*239 OPINION.
Sea well :
Various issues were raised in the pleadings, but all were disposed of at the hearing through certain stipulations except three, which we will consider in the order set out in our findings.
1. The facts and contentions of the parties as to the first issue are as follows: In 1912 petitioner acquired two coal leases which the parties have stipulated covered an available tonnage of 4,300,000 tons. One lease applied to a six-tenths interest in certain coal property and the other to a four-tenths interest in the same property (except as to 300 acres which were released from the former lease to a related company under certain conditions which do not appear to be in dispute) , and the petitioner was obligated under the leases to pay a royalty of 8 cents for each ton of coal mined, six-tenths of such amount going to one lessor and four-tenths to the other. After the execution of the leases and prior to the time when any coal had been mined, one lessor waived royalties to the extent of $25,000 and the other to the extent of $8,000 out of the first coal mined, as shown in our findings. On account of the foregoing waiver of royalties, the Commissioner allowed a paid-in surplus to the petitioner of $33,000. The parties have stipulated that the depletable capital of the petitioner in 1912 and on March 1, 1913, exclusive of the effect to be given to the paid-in surplus on account of free royalties, was $189,-720.67. On the basis of the foregoing depletable capital and the stipulated tonnage of 4,300,000 tons, the Commissioner determined a depletion unit of 4.4121 cents per ton and has allowed depletion deductions in each of the years consistent with such determination.
*240 There is no dispute between the parties as to the correctness of the allowance by the Commissioner on account of the original de-pletable capital of $189,720.67. The difference arises with respect to the adjustment to be made on account of the paid-in surplus item of $33,000. The Commissioner considered that since the paid-in surplus which he allowed was applicable only to the first coal mined until the royalties waived equaled $33,000, the deduction allowable in each year should be based on the so-called depletion or exhaustion of that amount as the coal to which it applied was mined. On the other hand, the petitioner contends that the paid-in surplus should be considered as applicable to the entire tonnage in the mine and therefore the depletion unit should be adjusted on the basis of a total depletable capital of $189,720.67 plus $33,000, and such unit applied to all coal mined. We are of the opinion that the action of the Commissioner should be sustained. Since the allowance of the paid-in surplus is not in dispute, we have little information as to the circumstances surrounding its allowance other than subsequent to the execution of the lease voluntary concessions were made by the lessors to the extent of $33,000. It was not therefore depletable capital existing at the acquisition of the lease, nor is it shown to have existed at March 1, 1913, but rather it appears to be capital recognized by the parties on account of benefits which inured to the petitioner for only a limited period, namely, the period during which coal was mined from the property involved without the payment of royalties. A deduction on account of such capital would therefore properly be confined to such period and the adjustment to invested capital would follow on the same basis.
Another' question which is related to the foregoing issue is the deduction allowable on account of cash royalties paid. On its returns the petitioner claimed deductions for royalties as follows:
For calendar year 1917-$11, 381. 36
Six months ended June 30, 1918_ 5, 876. 80
Fiscal year ended June 30, 1919- 11, 695.27
The Commissioner allowed deductions in the following amounts:
Calendar year 1917-$2,276. 24
Six months ending June 30, 1918_ 1,175.36
Fiscal year ending June 30, 1919- 6, 393. 20
The record shows that royalties were paid or accrued in the amounts of $5,692.55, $4,701.45 and $9,201.44 for 1917, the six-month period ended June 30, 1918, and the fiscal year ended June 30, 1919, respectively, and accordingly the petitioner is entitled to an additional deduction in each of the foregoing years of the difference between the amounts allowed by the Commissioner and the foregoing amounts now shown to have been paid in the respective years.
*241 2. As to the salary deductions claimed by the petitioner, we are convinced that the evidence more than satisfies the requirement of the statute as to reasonableness. Little question could be raised as to the salary of C. B. Maxwell, who was described as one of the best mining engineers in central Pennsylvania and who, on account of more lucrative offers elsewhere, was retained by the .petitioner in part because of his stock interest therein. With respect to B. W. Wigton and F. H. Wigton, the evidence shows that they not only exercised general supervision over the petitioner in their capacity as officers and assumed full responsibility for collections, but also were responsible for the entire sales of petitioner’s coal. No commission or compensation was paid for the sales of coal other than was represented by their salaries. As measured by commissions alone, when compared with the commissions paid by other concerns for similar services, the salaries are reasonable. The fact that they held similar offices with two other concerns is not decisive.as to the salary allowances which may be deducted on account of services to the petitioner; the test is whether the compensation which is sought to be deducted by the petitioner is reasonable when measured by the services rendered to the petitioner, and as to this, we are satisfied. On the whole, we are of the opinion that the salaries as well as the directors’ fees claimed by the petitioner as deductions on account of compensation to the three officers named are reasonable and should be allowed.
3. We are of the opinion that the expenditures for mining equipment set forth in our findings of fact come within the rule laid down in various prior court and Board cases wherein similar items have been allowed as deductions, and accordingly the action of the Commissioner as to this issue is reversed. United States v. Roden Coal Co., 39 Fed. (2d) 425; Marsh Fork Coal Co. v. Lucas, 42 Fed. (2d) 83; Commissioner v. Brier Hill Collieries, 50 Fed. (2d) 777; West Virginia-Rittsburgh Coal Co., 24 B. T. A. 234; and Tennessee Consolidated Coal Co., 24 B. T. A. 369.

Judgment will be entered under Rule 50.